WILLIAM CALL *vs.* FRANKLIN HOUDLETTE.

Lincoln.   Opinion April 1, 1882.

*Shipping.   Right of part owner to the earnings.   Subrogation.*

The administrator of a part owner of a vessel recovered judgment in an action, commenced by his intestate, for the earnings of the vessel, and appropriated a part of the proceeds in compliance with an assignment of the claim by his intestate, as collateral security for debt, and settled the balance of the debt as agent for the surety, and appropriated the balance of the judgment, fifteen hundred dollars, upon another debt of his intestate, which he settled as agent for the same surety, either debt largely exceeding the amount of the judgment. The estate of his intestate was rendered insolvent, and no part of this judgment was charged in the account of administration. The administrator had heard that there was another part owner to the vessel, but received no notice from him until the proceeds of the judgment had been appropriated as aforesaid.

*Held*, that the other part owner could recover of the administrator his portion of the earnings of the vessel, being less than fifteen hundred dollars, with interest, in an action for money had and received.

ON REPORT.

Assumpsit for money had and received.

The defendant was administrator on the estate of Henry S. Hagar, who, in his lifetime, had commenced an action for freight money of certain vessels, one being the brig Yazoo of which the plaintiff was part owner. Hagar assigned the claims under this action as collateral security for a debt of fifteen thousand dollars, upon which his mother, Sarah Hagar, was holden as surety.

Hagar was also indebted to his counsel in that suit for a larger amount, which was secured by collaterals belonging to his mother. Hagar died before judgment, which was taken in the name of this defendant as administrator. The counsel collected the judgment, and the net proceeds, five thousand dollars, he appropriated by sending thirty-five hundred dollars to the person for whose benefit the Hagar assignment was made, and crediting fifteen hundred dollars on his claim against the Hagar estate. This defendant, as agent for Sarah Hagar, settled and paid the balance of the fifteen thousand dollar debt upon which the thirty-five hundred dollars had been paid, and a few days after as agent for Sarah Hagar settled with and paid the balance due on the claim of the counsel, which was secured by her collaterals, and on which the fifteen hundred dollars were credited. Hagar's estate was rendered insolvent and no part of this judgment was charged to the administrator in his account of administration.

This defendant had heard before Hagar's death that the plaintiff was a part owner of the brig Yazoo, and he knew that a portion of the judgment was for the earnings of the Yazoo, but he received no notice from the plaintiff that he claimed any portion of that judgment, until after its appropriation as above stated, and the settlements were made.

This action was to recover the amount of plaintiff's portion of the earnings of the Yazoo which entered into that judgment, and it was agreed, such portion amounted to $1133.32 at the time of the trial.

*A. P. Gould,* for the plaintiff.

*J. W. Spaulding* and *F. J. Buker,* for the defendant.

DANFORTH, J. This case has once been before the law court, 71 Maine, 308, and it was then held that "the plaintiff's ownership is *prima facie* evidence of his right to a share in the sum recovered for the earnings of the vessel, notwithstanding a recovery in Hagar's name alone." That the plaintiff was such an owner, and that the judgment in the action began by Hagar in his lifetime, recovered and collected by this defendant as his administrator included such earnings, are conceded facts. It follows that when that judgment was collected, the defendant

had in his hands a sum of money, the amount of which has been agreed upon by the parties, which belonged to the plaintiff, and which has not been in any way disposed of with his consent.

In the same decision it was held that, "if the defendant in good faith paid over the money or allowed it to be appropriated for the benefit of the estate he represented, without notice not to pay it over, he is not liable therefor." This presented a question of fact for the jury, which was taken from them by the ruling of the presiding justice, and the exceptions filed to that ruling were sustained. By the present report of the case this question is presented to the court upon the evidence.

Starting from the point, which, as we have seen is conceded, that the defendant at one time had money in his hands belonging to the plaintiff, it is quite evident that the burden is upon him to show why he should not be liable in this action; for, as held in *McLarren* v. *Brewer*, 51 Maine, 402, so long as the plaintiff can trace his property he may recover, and to this rule, as there stated, money is no exception. Assuming this burden, the defendant says he appropriated the money in good faith for the benefit of the estate, relying upon the assignment made by his intestate. Upon this point there seems now to be no dispute in regard to the material facts, and without imputing any moral delinquency or fraud to the defendant, we think they fail to sustain the defence.

In his testimony the defendant admits that he had knowledge of the plaintiff's ownership in the vessel. He denies personal and positive knowledge, and lays considerable stress upon that fact. But he admits that he had been so informed both in Hagar's lifetime, and subsequently and from his answers, no other inference can be drawn, than that he believed the information. He also knew that the judgment included a sum for the earnings of that vessel. Here certainly is sufficient knowledge to put him upon his guard, sufficient to induce the belief that the plaintiff had some interest there which should not and could not with propriety be disregarded.

Nor does the assignment under which the defendant claims to have paid the money avail him. Independent of the suspicion which his knowledge should have thrown upon its validity, only

a portion of the money included in the judgment was paid in accordance with its provisions. The assignment was not absolute, but as collateral security for a specific demand. This demand was secured by other property, and the notes were signed by Mrs. Hagar as surety, and after its discharge fifteen hundred dollars were left, more than sufficient to meet the plaintiff's claim.

True, this fifteen hundred dollars was subsequently allowed upon another demand, upon which Mrs. Hagar was also surety. But the defendant could not avail himself of any subrogation to which Mrs. Hagar might have been entitled. This was a personal privilege which she alone could claim, or which she might waive. The case shows that the other collateral was assigned to her, while it does not appear that she made any claim whatever to this. There was then no subrogation in fact.

Another objection to the defence, is the fact that the money was not in a legal sense paid for the benefit of the estate. It was paid upon a demand due from the estate. But the defendant in his evidence, says the estate had been decreed insolvent, and this demand had never been proved before the commissioners. It was not competent therefore, for him to pay any part of the estate's money upon it. This should have been reserved to be distributed in the legal way among all the creditors. Nor does it appear that he did so appropriate, or allow it to be appropriated as belonging to the estate. From his own statement he neither charged himself as administrator with this money, nor gave himself credit for the amount paid by it. Nor did he act as administrator in the settlement of that demand, but in an entirely distinct capacity, that of agent for one who was surety therefor. It may therefore be properly said that as to this plaintiff, he not only had knowledge of such facts as should have, at least, led to further inquiries as to the ownership of this money, but that legally he still has the money in his hands. In accordance with the provisions of the report, the default must stand, and

*Judgment for $1133.32, and interest,*
*as provided in the report.*

APPLETON, C. J., WALTON, BARROWS and PETERS, JJ., concurred.

LIBBEY, J., having been of counsel did not sit.